# MAEDGEL E. ANDERSON v. LOUIS LARSON.[1]

June 14, 1929.

No. 27,444.

*Raymond H. Dart,* for appellant.

*Alva R. Hunt* and *E. W. Campbell,* for respondent.

[1]Reported in 225 N. W. 903.

OLSEN, C.

Appeal by plaintiff from an order denying her motion for a new trial.

Plaintiff brought this suit to recover damages for the alleged breach of the covenant of seizin in a deed of land.

Tobias Johnson was the owner of a farm in Meeker county in this state. He died intestate December 26, 1918. He left him surviving as his heirs at law Carl Johnson, a son, and Mary Larson, a daughter. His estate was duly probated in the probate court of Meeker county, and final decree entered in the matter on November 7, 1919. The decree assigned to and vested in the son and daughter each an undivided one-half of the farm land. The decree was duly recorded. The daughter, Mary Larson, died intestate February 8, 1919. She left as her heirs at law her husband, Louis Larson, defendant herein, and two daughters, Maedgel E. Anderson, this plaintiff, and Rosella Olson. Her estate was duly probated and final decree therein entered in said probate court on January 7, 1920, assigning to each of her said heirs an undivided one-sixth of the farm land in question. Such decree was duly recorded. Prior to the entry of the final decree in the Mary Larson estate and on October 6, 1919, the defendant, Louis Larson, sold and conveyed to this plaintiff his undivided one-sixth interest in the land. Plaintiff brings the action to recover damages for the alleged breach of the covenant of seizin in the deed so given. The claim that there was a breach of this covenant is based on the facts now to be stated. On August 9, 1918, some five months before his death, Tobias Johnson executed a deed in terms conveying all of the land to his son, Carl. At the time the deed was executed Tobias Johnson was sick in bed. He sent for E. P. Peterson of Litchfield and employed him as his attorney. What took place at the time the deed was executed is stated by Peterson as follows:

"Mr. Johnson told me that his son, Carl, wanted him to deed him the farm, * * * He says, 'Carl Johnson wants me to deed him the farm but I don't want to do that.' 'Well,' I said, 'you can make a will in his favor, if you wish to, how would that be?' Well, no,

he thought he would rather avoid the expenses of probating the estate, and he would make a deed and leave it with me, and that if his son, Carl, took care of him as he wanted to be taken care of, to his satisfaction, as long as he lived, and then paid all his doctors' bills and nursing bills, and his funeral after his death, then he might come to me and get the deed.   *   *   *   After I had prepared the deed and Tobias Johnson had signed it, he called in his son, Carl, into the room, and he told Carl then what he intended to do, and Carl then said, 'Why don't you give me the deed now?' And the old man said, 'No, I won't do that, but if you will take care of me the way I have to be taken care of, as long as I live, and then pay my expenses and my funeral, then you can go to Peterson and get the deed, otherwise not.'   *   *   *   Then I suggested that I would draw up a little memorandum for Carl to sign, and which he signed."

The memorandum signed by Carl read as follows:

"Acton   Aug 9, 1918

"My father Tobias Johnson having this day made and deposited in escrow with E. P. Peterson of Litchfield a deed to me of his farm and timber lots in Acton Town in Meeker County, to be delivered to me at his death, I, Carl J. Johnson, his son, do hereby promise and agree to well and faithfully care for and support him my father in comfort as long as he lives—and to pay all expenses of nursing and doctors attendance for him which shall be necessary for his care and comfort; and also to pay all his funeral expenses at his death.

"Carl Johnson."

The deed was delivered by the grantor to Mr. Peterson, and the memorandum also delivered to him. They have ever since been retained by him. Neither has been recorded. Carl Johnson was ill at the time of his father's death and died ten days thereafter. He never asked for or received the deed in question. It was never delivered to him. The funeral expenses of Tobias Johnson were paid by his administrator out of property of his estate other than the land in question.

The defendant by his answer denies that there was any breach of the covenant of seizin, pleads the statute of limitations as a bar, pleads his own title as derived from Tobias Johnson by the final decrees of the probate court in the Tobias Johnson and Mary Larson estates, and the further fact that plaintiff had parted with her title and right to an undivided three-fourths of the land by mortgage to one E. Marie Cutts, which mortgage had been foreclosed, time for redemption had expired and no redemption made. Damages are denied, and it is alleged that no one has made any claim to the land under the deed from Tobias to Carl Johnson, or sought to oust or disturb plaintiff in the title, possession or use of the land.

The court, in effect, found that there was no breach of the covenant of seizin; that the deed from Tobias Johnson to Carl Johnson had never been delivered or become effective; and that, at the time he conveyed an undivided one-sixth of the land to plaintiff, the defendant had title to and was seized of the interest so conveyed under the probate decrees in the Tobias Johnson and Mary Larson estates. The court accordingly held that plaintiff was not entitled to recover.

We conclude that the findings made and decision reached are sufficiently sustained by the evidence. The deed from Tobias Johnson to his son, Carl, was never delivered to the grantee nor to anyone for him. Mr. Peterson was employed by and as the attorney and agent of the grantor. Taking the evidence as a whole, it reasonably appears that there was no present intention of vesting title to the land in Carl Johnson. The grantor expressly refused to deliver the deed to the grantee at the time it was made. Conditions, never fully complied with, were imposed as to its future delivery. The agent had no authority to deliver to anyone other than the grantee. It may reasonably be inferred that the deed was not to become effective until the conditions were fully complied with and the deed delivered to the grantee during his lifetime; in other words, that the grantee be living so that the deed could be delivered to him after the conditions were complied with. The evidence tends to show that the deed was not unconditionally delivered to Peterson

for delivery to the grantee, but that the grantor intended to and did retain control thereof, and placed it in the hands of his own agent so as to retain control of the property and the deed. It tends to show the same intent and understanding as in the case of Wortz v. Wortz, 128 Minn. 251, 150 N. W. 809, although here not as clearly expressed.

In Pettis v. McLarne, 135 Minn. 269, 270, 160 N. W. 691, the court said:

"Delivery of a deed to a third person may be good delivery to the grantee, but it is a delivery to the grantee only when the grantor by some words or conduct evinces an intention to presently and unconditionally part with all control over it and that it shall take effect according to its terms."

The evidence in the present case negatives rather than evidences any such intent.

The written memorandum was not signed by the grantor and, while to be considered with all other evidence in the case, it is not conclusive.

All assignments of error have been considered. We find no material errors, and the conclusions reached dispose of the case. A brief consideration may be given other questions raised by defendant.

■ The burden of proof rested upon the plaintiff to prove a breach of the covenant. Defendant presented the final decrees of the probate court in the Tobias Johnson and Mary Larson estates, showing, prima facie at least, good title in himself to the undivided one-sixth interest in the land at the time he conveyed to plaintiff. There has never been any direct proceeding to vacate or disturb these decrees. Plaintiff herself, equally with the defendant, was a party to and obtained a share in the land under the probate decree in the Larson estate, which decree in turn was based on the title obtained by Mary Larson under the probate decree in the Tobias Johnson estate. As against this plaintiff in her present action, the probative value of these decrees was for the trial court.

■ It is the rule in this state that the covenant of seizin in a deed is broken, if broken at all, at the time the deed is given, and a cause of action then accrues, but that the covenant nevertheless goes with the land and passes to subsequent purchasers if the original covenantee has not brought action for the breach. Kimball v. Bryant, 25 Minn. 496; Ogden v. Ball, 38 Minn. 237, 36 N. W. 344; Security Bank of Minnesota v. Holmes, 65 Minn. 531, 68 N. W. 113, 60 A. S. R. 495; Randall v. Macbeth, 81 Minn. 376, 84 N. W. 119, 83 A. S. R. 387; Allis v. Foley, 126 Minn. 14, 147 N. W. 670.

Where the original covenantee mortgages the land and the mortgage is foreclosed, the purchaser at the mortgage sale, after time to redeem has expired, stands in the same position as a grantee by deed. Allis v. Foley, 126 Minn. 14, 147 N. W. 670. It is there held that "the right to sue for breach of covenants which run with the land rests exclusively in the last covenantee, and an intermediate covenantor has no right of action thereon until he has indemnified such subsequent covenantee."

The case of In re Estate of Hanlin, 133 Wis. 140, 113 N. W. 411, 17 L.R.A.(N.S.) 1189, 126 A. S. R. 938, goes into the matter quite fully and concludes that a covenant running with the land is not broken, except technically, before there is eviction or actual damage; that, while an action for nominal damages might be brought as soon as the deed is given, yet an action for substantial damages would not accrue until there was eviction or actual loss.

The English and Canadian rule is that there may be a technical breach of a covenant of seizin at the time the deed is made, allowing an immediate recovery of nominal damages, but that the breach is a continuing one and not final and complete until there is actual loss or damage, thereby allowing the covenant to run with the land for the benefit of subsequent grantees or assignees who may suffer damages. See note to Faller v. Davis, Ann. Cas. 1913B, p. 1187. This appears to be substantially the same as the holdings of this court.

The authorities seem in agreement on the rule that, where the covenant runs with the land and the original covenantee is not

evicted and suffers no actual loss, and brings no action on the covenant but conveys the land to another, the benefit of the covenant then passes to his grantee, and thereafter the original covenantee cannot sue thereon unless he has suffered actual loss by being called upon by his own grantee to make good the covenant.

Here the plaintiff has conveyed away three-fourths of the land and has not suffered any loss or been called upon to make good in any way as to the land so conveyed. She is not in a position to sue for damages on account of the land so disposed of by her.

The order appealed from is affirmed.

DIBELL, J. took no part.